UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS S.,

                  Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

Case No. C20-5083 RAJ

**ORDER REVERSING AND REMANDING DENIAL OF BENEFITS**

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred by (1) failing to apply the "worn-out worker" rule from 20 C.F.R. § 404.1562(a); (2) improperly evaluating medical opinions from Terilee Wingate Ph.D., Nancy Armstrong, ARNP, Pamil Sidhu, M.D., and Elisabeth McCrery, ARNP; and (3) rejecting Plaintiff's testimony regarding his problems reaching due to a shoulder impairment. *See* Dkt. 9, p.1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff is 55 years old, has a limited education, and has worked as a landscape laborer. Dkt. 7, Admin. Record ("AR") 39, 91, 261. On December 1, 2017, Plaintiff applied for benefits, alleging disability as of May 15, 2016. AR 91–92, 230–39, 241–45. Plaintiff's applications were denied initially and on reconsideration. AR 91–116, 119–50. After the ALJ conducted a hearing on February 7, 2019, the ALJ issued a decision finding Plaintiff not disabled. AR 25–41, 47–88.

In his decision, the ALJ found Plaintiff had severe impairments of shoulder abnormalities, diabetes, hypertension, obesity, spondylolisthesis, degenerative disc disease, vascular disease, major depressive disorder, and posttraumatic stress disorder. AR 28. The ALJ found Plaintiff had the RFC to perform light work with additional limitations. AR 31. Plaintiff could perform work that requires no more than occasional climbing of ladders, ropes, or scaffolds, and overhead reaching; "does not require occasional stooping, kneeling, crouching, crawling, or climbing of ramps or stairs;" does not require concentrated exposure to hazards or extreme cold; and allows occasional change between sitting and standing. *Id.* Plaintiff could perform work consisting of unskilled tasks, with no more than superficial interaction with coworkers or the general public. *Id.*

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1–3.

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 2

only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020).

### A.   20 C.F.R. § 404.1562(a)

Plaintiff contends the ALJ erred by failing to address the "worn-out worker" rule from 20 C.F.R. § 404.1562(a).[1] *See* Dkt. 9, pp. 3–4. That rule provides:

> If you have no more than a marginal education, and work experience of 35 years or more during which you did only arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of a severe impairment(s), we will consider you unable to do lighter work, and therefore, disabled.

20 C.F.R. § 404.1562(a) (internal citations omitted).

The parties focus their dispute on whether Plaintiff had a marginal education such that the worn-out worker rule would apply. The regulations define marginal education as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 404.1564(b)(2). The regulations define limited education as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 404.1564(b)(3). The regulations explain formal education may not be meaningful if the

---

[1] The rule also appears at 20 C.F.R. § 416.962(a), for Supplemental Security Income benefits claims. Plaintiff focused his argument on the regulations applicable to Disability Insurance benefits claims, so the Court does the same.

claimant completed it many years before his impairment began. "Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R. § 404.1564(b).

The ALJ found Plaintiff had a limited education. AR 39. Plaintiff contends this was error despite his admission that he completed eighth grade. *See* AR 52, 261. Plaintiff argues he "is barely literate, with writing skills demonstrably inferior than the 6th grade level." Dkt. 9, p. 4. But Plaintiff testified he could pick up a newspaper and read an article. AR 66. He testified he had problems with spelling and punctuation, and thought someone "might understand" it if he wrote a simple letter. *Id.* Plaintiff testified he can add and subtract. AR 67. Given this evidence, Plaintiff has not shown the ALJ erred by applying the general definitions of marginal and limited education, and therefore by not applying the worn-out worker rule. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding the party challenging an administrative decision bears the burden of proving harmful error).

**B.      Medical Opinions**

As an initial matter, the Commissioner argues new regulations promulgated in 2017 change the standard by which the ALJ's reasons for rejecting medical providers' opinions are measured. *See* Dkt. 13, pp. 4–7, 10–11. The regulations applicable to cases filed before March 27, 2017 set out a hierarchy for treatment of opinion evidence—

consistent with Ninth Circuit case law—in which more weight was generally given to the opinion of a treating doctor than to an examining doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); 20 C.F.R. §§ 404.1527, 416.927. This hierarchy underpinned the requirement in the Ninth Circuit that an ALJ must provide clear and convincing reasons to reject an uncontradicted doctor's opinion and specific and legitimate reasons where the record contains a contradictory opinion. *See Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983); *see also Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020).

In 2017, the Commissioner revised agency regulations to eliminate the hierarchy of medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

The Ninth Circuit has not yet stated whether it will continue to require an ALJ to provide "clear and convincing" or "specific and legitimate" reasons for rejecting medical opinions given the Commissioner's elimination of the hierarchy. The Commissioner's new regulations still require the ALJ to explain his or her reasoning, and to specifically address how he or she considered the supportability and consistency of the opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Obviously, the ALJ's reasoning must remain

legitimate, meaning lawful or genuine, *see Black's Law Dictionary* (11th ed. 2019), as it must still be supported by substantial evidence and free from legal error, *see Ford*, 950 F.3d at 1153–54 (citing *Tommasetti*, 533 F.3d at 1038).  The Court will therefore consider whether the ALJ specifically and legitimately explained how he considered the supportability and consistency factors regarding the providers' opinions.

The Commissioner's new regulations also reclassify nurse practitioners as acceptable medical sources.  *See* 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7).  The same standard for evaluating the ALJ's rejection of Dr. Wingate's and Dr. Sidhu's opinions thus applies to evaluating the ALJ's rejection of Ms. Armstrong's and Ms. McCrery's opinions.

### 1. Dr. Wingate

Dr. Wingate examined Plaintiff in June 2016, and again in May 2017.  *See* AR 367–75, 413–20.  Plaintiff challenges only the ALJ's evaluation of Dr. Wingate's opinions from May 2017.  *See* Dkt. 9, pp. 5–6.  In May 2017, Dr. Wingate opined Plaintiff had moderate limitations in his ability to understand, remember, and persist in tasks by following detailed instructions, perform activities with a schedule, maintain attendance, communicate and perform effectively in a work setting, and complete a normal workday and week without interruptions from psychologically based symptoms.  *See* AR 415.

The ALJ found Dr. Wingate's 2017 opinions "somewhat persuasive."  AR 39.  The ALJ explained Dr. Wingate's report was consistent with the record, "insofar [sic] it

suggests the claimant is capable of unskilled work with some limitations on social interactions . . . . However, such evidence does not suggest limitations greater than found in this decision." *Id.*

Plaintiff contends, based on the RFC, the ALJ rejected Dr. Wingate's opinion that Plaintiff was moderately limited in his ability to complete a normal workday and week without interruptions from psychologically based symptoms. Dkt. 9, pp. 5–6. An ALJ in effect rejects an opinion when he fails to include in the RFC a limitation that corresponds to the opinion. *See Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016). But the ALJ need not include a functional limitation in the RFC if it would not restrict Plaintiff from any work opportunities. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (explaining the RFC describes the most a claimant can do despite physical and mental limitations "that affect what [the claimant] can do in a work setting"). Here, the ALJ reasonably interpreted Dr. Wingate's opinion as not precluding full-time work. "Even when an agency 'explains its decision with less than ideal clarity,' we must uphold it 'if the agency's path may reasonably be discerned.'" *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). Dr. Wingate noted vocational training or services would minimize or eliminate Plaintiff's barriers to employment, and noted Plaintiff may be able to return to job search assistance once he dealt with his physical issues. AR 415–16. Both findings indicate Plaintiff's moderate limitations would not prevent him from working. The ALJ thus reasonably found Dr. Wingate's opinions were somewhat persuasive to the extent they did not limit

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 7

Plaintiff beyond what was set forth in the RFC. AR 39. Plaintiff has failed to show harmful error. *See Ludwig*, 681 F.3d at 1054 (citing *Shinseki*, 556 U.S. at 407–09).

### 2. Ms. Armstrong and Dr. Sidhu

Ms. Armstrong completed a physical functional evaluation of Plaintiff in July 2016. *See* AR 376–80. Ms. Armstrong opined Plaintiff was markedly limited in his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, crouch, see, hear, and communicate due to depression, anxiety, diabetes, hypertension, joint pain in the hips and shoulders, back pain and sciatica, and carpal tunnel syndrome. AR 377. Ms. Armstrong opined Plaintiff was unable to perform even sedentary work. AR 378.

Dr. Sidhu performed a review of medical evidence in April 2018, reviewing Ms. McCrery's evaluation and a radiology report from August 2016. *See* AR 700–03. Dr. Sidhu opined Plaintiff had marked postural restrictions, significant or moderate gross or fine motor skill restrictions, maximum 10-pound lifting restriction, and must sit for most of the day, walking or standing for brief periods. *See* AR 701–02. Dr. Sidhu opined Plaintiff was limited to sedentary work. *See* AR 700, 702.

The ALJ analyzed Ms. Armstrong's and Dr. Sidhu's opinions together, and rejected both opinions as "not persuasive." AR 37. The ALJ reasoned Ms. Armstrong evaluated Plaintiff "on a limited basis" and both providers "reviewed limited records." *Id.* The ALJ added Ms. Armstrong's and Dr. Sidhu's opinions were inconsistent with those of Dr. Judish (whose full name and medical degree are not indicated in the record), physical therapist Linnea Comstock, DPT, and non-examining doctors Howard Platter,

M.D., and Desmond Tuason, M.D. *See id.*

The ALJ erred in rejecting Ms. Armstrong's and Dr. Sidhu's opinions based on their limited treatment and review of limited records. An ALJ may not reject a medical opinion "with boilerplate language that fails to offer a substantive basis for" the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). The ALJ did not identify what information these providers did not have that would undermine their conclusions, and thus failed to adequately explain the supportability or consistency factors in rejecting their opinions.

The ALJ further erred in rejecting Ms. Armstrong's and Dr. Sidhu's opinions as inconsistent with the opinions of Dr. Judish, Ms. Comstock, Dr. Platter, and Dr. Tuason. The ALJ is empowered to choose opinions from certain providers over those of others, but in order to allow for meaningful review, the ALJ must give reasons explaining why he chose certain opinions over others. *See Patricia F.*, 2020 WL 1812233, at *4 (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017)). All the ALJ did here was give a boilerplate statement noting which opinions he preferred. That is inadequate, and thus the ALJ erred in rejecting the opinions of Ms. Armstrong and Dr. Sidhu.

### 3.   Ms. McCrery

Ms. McCrery completed a physical functional evaluation of Plaintiff in March 2018. *See* AR 695–99. Ms. McCrery opined Plaintiff was markedly limited in his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch due to thoracic

and lumbar back pain, left shoulder pain, bilateral hip pain, and right knee pain. *See* AR 696. Ms. McCrery opined Plaintiff was limited to sedentary work. AR 697.

The ALJ rejected Ms. McCrery's opinions as "not persuasive." AR 37. The ALJ reasoned Ms. McCrery "only listed pain as diagnoses affecting work activity, which are symptoms not impairments." *Id.* (internal citation omitted). This reason is not supported by substantial evidence. Ms. McCrery made specific diagnoses using common medical billing codes, and then identified the impairments—not just the symptoms—those diagnoses caused. *See* AR 696.

The ALJ further rejected Ms. McCrery's opinions because "concurrent exam notes noted lack of other signs including no involuntary movement or twitching (spasm), no acute distress, and no other signs such as tenderness, atrophy, or gait abnormalities. Aside from some limited spine and shoulder range of motion, [Plaintiff] had an otherwise normal physical exam." AR 37. But the ALJ failed to explain why the lack of these other signs matter. Limitations in range of motion due to pain could alone be sufficient to support, for example, lifting, carrying, pushing, and pulling restrictions. That Plaintiff did not demonstrate tenderness or involuntary twitching does not clearly undermine Ms. McCrery's opined limitations.

Finally, the ALJ erred in rejecting Ms. McCrery's opinions on the basis that he found the opinions of Dr. Platter and Dr. Tuason more persuasive. *See* AR 37. Again, the ALJ could find those opinions more persuasive, but needed to give reasons why he did so. *See Patricia F.*, 2020 WL 1812233, at *4 (citing 82 Fed. Reg. at 5852). All he

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 10

did here was state his preference.  The ALJ therefore erred in rejecting Ms. McCrery's opinions.

### C. Plaintiff's Symptom Testimony

Plaintiff argues the ALJ erred in rejecting his testimony regarding the reaching limitations his shoulder impairment causes.  Dkt. 9, pp. 9–13.  Plaintiff testified he has problems with both shoulders, which cause problems reaching.  *See* AR 68, 290, 307, 312.  He testified he can reach forward, but could only do a job that involved putting things together at a desk in front of him for about a half hour.  AR 69.  He testified he can reach overhead, but it hurts.  *Id.*  Plaintiff thought he could reach up and bring down maybe 10 pounds.  AR 69–70.  He could reach to the side for limited periods of time.  AR 70.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  *Trevizo*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  *Garrison*, 759 F.3d at 1014–15.  At this stage, the claimant need only show the impairment could reasonably have caused some degree of the symptoms; he does not have to show the impairment could reasonably be expected to cause the severity of symptoms alleged.  *Id.*  The ALJ found Plaintiff met this step.  AR 31.

If the claimant satisfies the first step, and there is no evidence of malingering, the

ALJ may only reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet." *Garrison*, 759 F.3d at 1014–15. The ALJ's analysis did not meet this standard.

The ALJ erred in rejecting Plaintiff's shoulder symptom testimony as inconsistent with the medical evidence. *See* AR 33, 35. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the claimant's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). In discussing the medical evidence, the ALJ noted Plaintiff had some normal findings along with some abnormal findings, but failed to explain how that contradicted Plaintiff's testimony. *See* AR 33. Elsewhere, the ALJ determined Plaintiff showed improvement with physical therapy. *See* AR 36. But Plaintiff continued to experience symptoms. *See* AR 571. The ALJ did not identify evidence establishing that Plaintiff improved so substantially with physical therapy as to undermine his testimony that he was limited by his shoulders.

The ALJ similarly erred in rejecting Plaintiff's shoulder symptom testimony based on an alleged failure to seek additional treatment. The ALJ reasoned Plaintiff saw an

orthopedist who gave him treatment options, which Plaintiff said he would consider and then call when he was ready to move forward.  *See* AR 36.  This issue is closely related to the ALJ's evaluation of the overall medical evidence, so it is not clear the ALJ would reach the same conclusion had he correctly evaluated the overall medical evidence.  The ALJ thus erred in rejecting Plaintiff's testimony based on failure to seek treatment.

The ALJ also erred in rejecting Plaintiff's testimony based on Ms. Comstock's statement that she believed Plaintiff was capable of driving a truck.  *See* AR 35, 914.  The ALJ reasoned driving a truck was a medium exertion job per the *Dictionary of Occupational Titles* ("DOT"), which was beyond what Plaintiff testified he could do.  *See* AR 35.  The record does not contain any evidence showing Ms. Comstock was using the DOT definition of a truck driver when describing Plaintiff's capabilities.  *See* AR 914.  The ALJ's reasoning here was thus not supported by substantial evidence, and not a valid reason to reject Plaintiff's testimony.

The ALJ further erred in rejecting Plaintiff's symptom testimony based on his interactions with Washington's Department of Vocational Rehabilitation ("DVR").  The ALJ's analysis does not identify any facts that undermine Plaintiff's testimony regarding the severity of his shoulder symptoms.  Plaintiff indicated a desire to work as a truck driver, but the evidence does not show that was anything more than a desire.  *See* AR 747.  Plaintiff requested his DVR file be closed in 2017 because he needed to move his mother in with him, which the ALJ noted was inconsistent with Plaintiff's statement that he lived alone.  *See* AR 35, 810.  Plaintiff again stopped DVR services in 2018 and

reported the Department of Social and Health Services was "making him" apply for disability. *See* AR 36, 788–89.  Nothing about any of these facts shows Plaintiff could do more than he alleged, or undermines his testimony in any relevant way.  The ALJ thus erred in rejecting Plaintiff's shoulder symptom testimony based on these facts.

In sum, the ALJ failed to provide any valid reasons for rejecting Plaintiff's testimony regarding the severity of his shoulder symptoms.

### D.     Scope of Remand

Plaintiff asks the Court to remand this matter for an award of benefits.  Dkt. 9, pp. 13–14.  Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017).  The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits.  *Id.* at 1045.  First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence.  *Id.* (citing *Garrison*, 759 F.3d at 1020).  Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted).  If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Garrison*, 759 F.3d at 1020.  "Even if [the Court]

reach[es] the third step and credits [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The appropriate remedy here is to remand for further proceedings. The record does not unambiguously establish Plaintiff has limitations that would preclude him from working. Plaintiff's testimony and the medical opinions the ALJ erroneously rejected conflict with other medical opinions in the record, and the ALJ must resolve such conflicts. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

On remand, the ALJ shall reevaluate the opinions of Ms. Armstrong, Dr. Sidhu, and Ms. McCrery, as well as Plaintiff's testimony regarding the severity of his shoulder symptoms. The ALJ shall reevaluate all relevant steps of the disability evaluation process, and conduct further proceedings necessary to reevaluate the disability determination in light of this opinion.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 11th day of September, 2020.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge